John Gallo and Alide M. Gallo v. Commissioner.
Gallo v. Commissioner
Docket No. 57792.
United States Tax Court
T.C. Memo 1959-65; 1959 Tax Ct. Memo LEXIS 187; 18 T.C.M. (CCH) 333; T.C.M. (RIA) 59065; March 31, 1959
Jacob Whitkin, Esq., 294 Washington Street, Boston, Mass., for the petitioners. Raymond T. Mahon, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in petitioners' income tax for 1950 of $35,484.38. The sole question presented is whether income in the amount of $71,640.90 received in 1950 pursuant to a judgment is includible in petitioners' gross income. Findings of Fact Some of the facts were stipulated and are hereby found. John Gallo, hereafter called petitioner, and Alide M. Gallo, husband and wife, filed a joint return for 1950 with the then collector of *188 internal revenue for the district of Massachusetts. From 1942 through 1950, petitioner was a sole proprietor engaged in business as a general contractor. At all times here in issue, he kept his books and records on the cash receipts and disbursements method of accounting and filed income tax returns on a calendar year basis. On April 7, 1942, petitioner entered into a contract with the Department of Public Works of the Commonwealth of Massachusetts, hereafter called the Commonwealth, to construct an earth dike 2,000 feet in length, connecting Governors Island and Commonwealth Airport in the City of Boston, and to place earth fill for the construction of a runway extension at Commonwealth Airport 1,000 feet in length and 500 feet in width. Item No. 1 under the contract provided for petitioner to be paid compensation at the rate of 30 cents for each cubic yard of earth or fill, otherwise known as borrow, removed, transported and placed in said dike and runway extension. Petitioner commenced work on April 24, 1942 and the contract was fully completed on August 6, 1943. At that time a dispute arose between petitioner and the Commonwealth as to the number of cubic yards of borrow *189 which had been removed, transported and placed in the dike and runway extension in accordance with the terms of the contract and as to the total amount due under the contract. No agreement could be reached between the parties. On June 7, 1949, petitioner brought suit against the Commonwealth by a petition filed in the Suffolk County Superior Court, hereafter called the Superior Court, in which petitioner asked recovery for work done and damages sustained. In a substitute petition filed on October 18, 1949, petitioner alleged that he was not paid for 252,152 cubic yards of material excavated under item No. 1 of the contract and was entitled to recover $75,645.60. On October 5, 1949, the Superior Court referred the case to an auditor. On January 12, 1950, the auditor filed a report of his findings with the Superior Court. The auditor's findings, in part, were: "[With respect to item No. 1 of the contract,] * * * the petitioner excavated and removed * * * [667,600 cubic yards of borrow] and transported and properly placed the said 667,600 cubic yards of borrow so excavated and removed as required by the contract, which, at the rate of * * * 30" * * * [per] cubic yard, aggregates *190 the sum of * * * $200,280 * * *. "[The] * * * [Commonwealth] paid to the petitioner * * * $128,639.10 for 428,797 cubic yards of borrow at the rate of * * * 30" * * * [per] cubic yard, * * *. "[Petitioner] is entitled to recover the difference between * * * $200,280, * * * and * * * $128,639.10, * * * which difference * * * [is] $71,640.90. * * *
"[On] August 30, 1948 the * * * [Commonwealth] paid the petitioner * * * $6,500 * * * which * * * [is] included in the * * * $128,639.10 * * * and that * * * payment was accompanied by a voucher * * * indicating an unpaid balance * * * of * * * $217.85, * * * which * * * [is] included in the * * * $71,640.90, * * *." On February 1, 1950, the Superior Court entered a judgment for petitioner in the amount of $71,640.90, plus interest of $26,048.79, in accordance with the auditor's report. The Commonwealth paid these sums to petitioner in 1950. Petitioner reported the interest in his 1950 return and it is not in dispute. Total receipts indicated on the original income tax returns for 1942 and 1943 were $247,152.35 and $227,180.60, respectively. Pursuant to the contract with the Commonwealth, petitioner received *191 and reported in the original returns for 1942 and 1943 not more than the amounts of $132,952.75 and $40,213.50, respectively. These amounts represented progress payments actually received of estimates through No. 11 and reflected all items under the contract. On July 14, 1943, a voucher representing estimate No. 11 indicated that $30,558.75 was retained by the Commonwealth. During 1950, petitioner filed amended returns for 1942 and 1943. He reported as income $6,445.50 and $58,477.55 for 1942 and 1943, respectively, out of the $71,640.90 received in 1950 from the Commonwealth. The balance, $6,717.85, was treated by petitioner as an accrual at December 31, 1943 and was not reported as income in any year. Income received in 1950 in the amount of $71,640.90 is includible in petitioner's gross income for 1950. Opinion Petitioner admittedly received in cash in the instant tax year a large amount which he claims to be entitled not to report. His justification appears to be that the whole of this item [1] had already been reported in the years 1942 and 1943. But even were that so - and the record makes this extremely doubtful - it would have been erroneous on any theory, and the proper *192 time to include it in petitioner's income was in the year before us. [2]
Respondent claims petitioner was on the cash basis in the earlier years. We have found this to be so, not only because petitioner has not proved otherwise, although his was the burden of proof, but because such unsatisfactory evidence as there is indicates affirmatively that petitioner was a cash basis taxpayer. Of course, there is no claim that these specific amounts were received in cash in the earlier years, as *193 they obviously could not have been, [3] and except for the possibility of constructive receipt, not present here, there could have been no warrant for reporting them on the theory of cash receipts accounting. See Consolidated Asphalt Co., 1 B.T.A. 79. But even if petitioner's accounts and returns were on an accrual method, the uncertainty existing as to the liability of the obligor, for at least a part of the amounts in issue, would prevent them from being properly accruable prior to the year of disposition of the controversy and ultimate payment of the previously resisted items. Jamaica Water Supply Co., 42 B.T.A. 359, affd. (C.A. 2) 125 Fed. (2d) 512, certiorari denied 316 U.S. 698; Clifton Manufacturing Co., 1 T.C. 71, revd. (C.A. 4) 137 Fed. (2d) 290. Petitioner, to be sure, insists that the dispute had not arisen until 1944. But the evidence shows that some amount must *194 have been open at the end of 1943, and there is no evidence that the entire unpaid sum was not contested before that year had been closed. At any rate the amount, if not the liability, was then uncertain. On either approach petitioner's earlier return of the receipts in question would have been erroneous accounting even had he done so, which seems doubtful. The latter is academic here. See section 1311, I.R.C. 1954; section 3801, I.R.C. 1939. It should perhaps be added that a part of petitioner's argument seems to involve the assumption that the award and payment in the tax year included sums in excess of what was properly due from the Commonwealth. Aside from the necessity this would create of impeaching the due judicial conclusion of the state court, the short answer is that petitioner received the total amount in question under claim of right and without restriction as to its use. It was includible in his income. North American Oil v. Burnet, 286 U.S. 417; National City Bank of New York v. Helvering, (C.A. 2) 98 Fed. (2d) 93, affirming 35 B.T.A. 975. There is accordingly no ground for holding that the deficiency was erroneous. Decision *195 will be entered for the respondent. Footnotes
1. In his reply brief, petitioner appears to concede that $25,520 was not so reported. ↩
2. Regulations 111. Sec. 29.42-1. When Included in Gross Income. - * * * gains, profits, and income are to be included in the gross income for the taxable year in which they are received by the taxpayer, unless they are included as of a different period in accordance with the approved method of accounting followed by him. * * * If a person sues in one year on a pecuniary claim or for property, and money or property is recovered on a judgment therefor in a later year, income is realized in the later year, assuming that the money or property would have been income in the earlier year if then received. * * *↩
3. "The sole question for determination is whether the income in the amount of $71,640.90 received by John Gallo in 1950 from the Commonwealth of Massachusetts is includible in petitioners' gross income for 1950." (Stip; par. 1.)↩